Andrew Love for Appellant Carpenters' Pension Fund of Illinois. There are two issues in this appeal. There's the dismissal of the operative complaint and there's the denial of the motion for reconsideration and for leave to file an amended complaint. With the court's permission, I'd like to start with the second issue first. Because we believe even though the existing allegations in the complaint are sufficient to plead a securities fraud claim, at minimum, the district court abuses discretion in denying appellant the opportunity to file a proposed amended complaint after only one substantive order on the sufficiency of the pleadings without addressing the new allegations in the proposed amended complaint. Relying literally on snippets of selected media reports not alleged in the complaint but comes from defendant's exhibits and taking those snippets out of context to make a premature factual finding, whether the truth of Target Canada's problems had already reached the market when their allegedly misleading statements were made. But take a step back. Dismissal was based on falsity. The court found although the allegations adequately pleaded the who, what, where, and when, it failed to provide the why the statements were false. And raised specific questions in its order, although it was a dismissal with prejudice, it still raised these questions in its order with regard to what it found lacking in the allegations. Again, this was the first time the court issued a dismissal order. So it was the first guidance from the court about the sufficiency of the allegations. And with that guidance, appellants sought reconsideration and leave to amend with allegations that addressed or sought to address the court's specific questions. So if I could highlight for the court a couple of examples from the proposed amended complaint that attempted to answer the questions the court asked but never addressed. And then I'd like to, if I may, point to examples of the court's improper reliance on these snippets from reports from defendants' exhibits. So first with regard to one of the statements, the May 22, 2013 statement by the CEO, Steinhoffel. This is at paragraph 189 of the original complaint about being confident that all supply chains were in place. And the dismissal order at appendix 171 stated the complaint failed to address whether the supply chain systems were working at that specific point in time when Steinhoffel made that statement and whether major fixes were needed. And so in the proposed amended complaint, there are allegations from CW12, who is a manager in Target Canada's IT program management office, who started in May 2013, exactly when the statement was made, and who says that at that very precise time the problems were so severe with regard to the supply chain that Target sent dozens of experienced personnel from the U.S. and she or he referred to it as a SWAT team to try to deal with these problems. The court's order never addressed this direct response to the court's concern. Another statement, the August 21, 2013 statement, this is at paragraph 208, that inventory issues being experienced in Canada were simply the same kind of fine-tuning that Target experienced when they opened stores in the United States. The court held at A174 that the complaint lacked allegations to show that there was any difference between what happened in the U.S. and Canada. Again, CW12, who had worked on IT operations in the United States for 12 years, stated the supply chain problems were very specific to Target Canada, nothing like in the U.S., that they stem from problems with the technology of the supply chain software as well as inaccurate data that led to products being under-ordered, over-ordered, required extra storage facilities at a great cost in the summer of 2013, which is exactly when the statement was made. Okay. A question here. The statement you just alluded to was a statement referring to inventory issues. The point is made by the appellee that they would argue that you have to look carefully at exactly what the management statement referred to. Did it refer to inventory? Did it refer to supply? Did it refer to IT? And so there are distinctions made here, and as I understand the argument, when you look carefully at the information that is alleged, which is contrary to the management statement, you find that it's information that has to do with different issues, not specifically, in this case, inventory. What's your response to that kind of an argument? Well, the first response, I think, is that plaintiffs do get the inference and that the supply chain and inventory issues were inextricably linked. The problems with having too much inventory in the warehouses, not enough in the stores, and that was directly related to the fact that the supply chain problems weren't working. There was an improper entry into the supply chain software system. It was out of sync with the warehouse management system. There was a replenishment system that didn't work at all. And because of these, what we call supply chain IT problems, there was an inventory overhang, which I believe this is a statement talking about response to inventory overhang, which is too much inventory in the warehouses. They were not communicating with the stores, so they weren't getting into the stores. They had to then procure these extra storage facilities, which were costing a lot of money. So it's all connected. I think the distinction between supply chain inventory is one without a difference. So the court didn't address these allegations. It didn't address other very detailed allegations from the other CWs, the confidential witnesses that were alleged in the proposed amended complaint. And these were senior people who were observing these systemic problems. And I point the court to Public Pension Fund versus KV Pharmaceutical. It's cited in the briefs, but 679 F3rd at 989, the abuse of discretion not addressing the new allegations. So instead of ruling on falsity, the court made a fact finding that the public was already aware of supply chain problems so that these allegedly misleading statements wouldn't have made a difference. The truth on the market analysis, which as the Seventh Circuit held, that such a fact based analysis is not available at the pleading stage. The court in this circuit, Stellent 326 F2nd, says essentially the same thing. A defense that the market was already aware of the omitted information is intensely fact specific and rarely an appropriate basis for dismissal. To hear worse, that this finding, this fact finding, was based on these out of context snippets of statements that were not even part of the complaint. They were in exhibits from defendants. They weren't traditionally noticed. They weren't incorporated into the complaint. They were simply exhibits attached to their motion to dismiss. And in the denial of the motion for reconsideration, the court relied, and even has a little chart I think on the second page of its order, on what it called two public manifestations of the supply chain problems from these media reports. And staggered openings and empty shelves. And according to the court, since the public knew about these things, whether they knew about the root problems of the supply chain wouldn't have made a difference. But I think the snippet about the staggered openings, if I could talk about that, is probably the best example of where the court went astray. So what the court relied on here was an excerpt from a Morgan Stanley report from March 27, 2013. This is at T259, which is in Applebee's appendix. And it did include a quote that said, or part of a quote that said, concern over startup issues drove staggered openings. That's the basis of the court's finding that these staggered openings were a public manifestation of the problem of the supply chain. The full sentence, which appears in the report under this positive heading of openings on track so far, is, quote, concern over system startups drove staggered openings. But we believe that they have not had any major setbacks so far. And more importantly, the context of the staggered openings is that Target announced they were going to open three pilot stores to start in Canada. And it wasn't not because there were any problems with the supply chain inventory systems, but because these were new systems, they wanted to make sure they worked before moving on to opening more stores. So this actually would have assured the public, as they did keep opening more stores, that the pilot stores, that the systems worked in the pilot stores and that allowed them to keep opening more stores. But the court took this one snippet and inferred it would have alerted the public to problems. And the same thing with empty shelves in stores, which the media noted was due to demand, not to supply chain problems. In fact, defendants touted this as a great problem to have. And if they had known, they would have opened more stores. So again, the empty shelves and staggered openings would not have alerted the public, even if this were a proper inquiry to the truth of the underlying problems. Another example is the March 28, 2013 statement from CFO Mulligan that Target had achieved all of its objectives, including the build-out of the supply chain, and that we're right where we want to be right now. The court found, in denying the motion for reconsideration, that this was not materially false because Mulligan tempered this by stating, for Canada, we certainly have our hands full right now. Again, this is a quote not in the complaint. It's in another part of this interview that was attached as an exhibit by defendants.  This is at T238 of Applebee's appendix. This is a statement about hands full. It was in response to a question about whether Target should – whether they considered opening Target Canada stores in different sizes, different formats. And the response is, well, we have our hands full right now. Had nothing to do – no reference to inventory. There's no sense that this anyway tempered the allegedly false statement. Counsel, does the record contain any reference or evidence of a formal inquiry or enforcement action by the SEC? No. Does that have any bearing on the outcome of the case? It doesn't. The pleading standard is pretty clear to state statements with particularity, false statements with particularity. There does not need to be a SEC investigation. In fact, there are cases that say whether there is or isn't. I know in the Ninth Circuit there are cases. It doesn't indicate whether or not fraud is alleged – properly alleged. So, again, the court's making this fact-finding on materiality based on these out-of-extra-complaint records. While the court can look outside the pleadings if the matters are necessarily embraced by the pleadings at the pleading stage, these media reports were not anywhere alleged in the complaint. In our 28J letter, we alerted the court to this case called Koja v. Orexogen. It's a Ninth Circuit case, 899 F3rd at 988. And it has a very, I think, important discussion about this trend of overusing extra-complaint documents when ruling on motions to dismiss in securities cases. I would refer the court to that. Counsel, I do have a question regarding the statements regarding strong supply chain infrastructure and effective inventory management. Target argues that those statements referred to not Target Canada, but Target U.S. Can you respond to that argument? Yes, so this would be the very first statement, March 20th. That's true. That did have to do – that was before Target Canada stores first opened. And so that was a reference to Target generally, not Target Canada specifically. But the context here is, I think, important. Right before this, defendants were talking about opening their stores in Canada and touting their supply chains as key to their success. So although this statement isn't precisely about Target Canada, I think investors would understand that when they're touting their effective supply chain as key to their success, they're about to open these stores when, in contrast to what they're saying to the public, things are a complete disaster with regard to the supply chain, with regard to the communication between the warehouse and the supply chain. And the other part of this statement, the part that specifically referred to Target Canada was the risk warning. It said our ability to successfully open the expected number of Canadian stores on schedule depends in large measure upon our ability to build our supply chain capabilities and technology system. That's on March 20th, indicating sort of similar with the pilot stores, assuring the public that we're not going to open these stores until we have the systems working. And they weren't working. And in fact, in complete contrast to that statement, CEO Steinhoffel says they're going to open these stores even if they're not working, even if the supply chain systems aren't working, even if they have to use pencil and paper. So they're giving the public this notion that everything is going fine. Maybe there's some startup, you know, growing pains, but it's just like what happened in the U.S. You don't have to worry. You know, everything is going well, unexpected. And in fact, it was a complete disaster. Just briefly, if there are no other questions on the motion for reconsideration. Although, I guess one other thing I want to say about that, I want to reemphasize that there was an initial complaint filed. Then there was an amended complaint once Carpenters Pension Fund became a lead plan if a lead counsel was appointed. So that was the amended complaint. And it was then the first motion to dismiss was filed. The district court denied with prejudice. So there was never an opportunity to file an amended complaint, which is quite unusual. And so that was the attempt of the motion for reconsideration and leave to amend was finally getting the court's guidance on specificity, which is more art than science. I mean, how much specificity is needed under the PSLRA? And it takes just a couple of times back and forth to figure out precisely what kind of specificity is needed. That was the purpose of going back after getting the court's guidance. The court, in our view, abused its discretion, didn't find bad faith, didn't find prejudice, undue delay, not clear that even found futility. It just denied the motion. And we would like an opportunity to go back and have the court consider the proposed allegations. Just lastly, we do believe that the original complaint had sufficient specificity. It noted the systemic supply chain problems throughout the class period. The court found, with regard to specific statements, that we didn't say at that particular time the statement was made what the problems were. But the complaint in detail alleges there were problems going throughout the entire class period. So we believe that was error as well. I'll save the rest of my time for rebuttal. Thank you. May it please the court, my name is Wendy Wildung. And I have the privilege to speak to you today on behalf of the appellees who are defendants below. This appeal is governed by the uniquely high pleading standards of the Private Securities Litigation Reform Act. Congress enacted the PSLRA to give federal courts a mechanism to weed out meritless securities cases at the pleading stage. This is exactly the kind of case that Congress had in mind when passing the PSLRA. It's a fraud by hindsight case that alleges nothing more than corporate mismanagement. The PSLRA has two requirements. The first is that the plaintiff must identify the statements alleged to have been false or misleading. That is the who, what, when, where, how, like 9B. But then to go on and plead specific contemporaneous facts that show the statements were false or misleading when they were made. It's not enough to make allegations about problems that existed over a long period of time. No matter how many adjectives or adverbs you use to describe them, and then claim that all the positive statements that were made were false because of these problems. Instead, you must match specific facts that existed as of specific dates to the statements that were made on those dates. And that's why the district court correctly dismissed the original complaint. Counsel, the plaintiffs have a high burden to meet, certainly, but I'd like to ask you about a statement, one in particular was the Mulligan statement on March 28th, that Canada had achieved its objective in building out its supply chain infrastructure. How was that not false or misleading at the time it was made, given what was going on in Canada at the time? Canada did have a supply chain. It had been built out. Now, the fact that it wasn't working perfectly doesn't make sense. It was a complete disaster, was it not? Well, that's their general allegation, but if you look at the specific facts they've alleged, they don't have any facts that tell you what the situation was as of that date on March 28th. I will also note, Your Honor, if you look at that statement and the investor presentation in which that statement was made, there's a question where an analyst says to Mr. Mulligan, you took it on the chin, didn't you, in social media with respect to your store openings. And Mr. Mulligan acknowledges that the replenishment system didn't work as well when the stores opened as it had in the testing. So nobody was hiding the fact that there were issues still to be addressed. Still seeing that you achieved your objective in building out your supply chain infrastructure sounds like an objectively verifiable statement that wasn't true. They had built a supply chain. They had warehouses. They had technology systems. They had a point of sale system. They had a forecasting system. As it turned out, they weren't working as well, but they had certainly built them out. And they had inventory in stores and they were selling merchandise. It just wasn't working as well. Would it be a true statement if their objective was to build a defective infrastructure? Well, I guess you could argue it was false if that was the case, but of course that's not what's alleged here, Your Honor. And let me talk about what the facts alleged in the complaint show. The plaintiffs have made an argument in their briefs about analyst reports, and some of those are referenced in the complaint. And we think you can consider them, and this is why. Because the allegations of statements that are challenged are not statements that are alleged to have been literally false, at least not on appeal. They're alleged to have been misleading because they omitted information. So when you're asking the question of whether or not a statement is actionable because it was misleading, you're entitled to look at the context of that statement and at other information that's in the public domain to see whether or not that statement left a false impression. But in this particular case, they have pleaded in their complaint and in their proposed Second Amendment complaint more than enough information to show there was no alleged fraud here. So let me point some of those things out if I may. Like other new business ventures, Target Canada encountered operational problems, but unlike many other business ventures, it's a retailer, and so those problems unfolded in public view. Now, dealing with problems are the daily work of business. That problems exist doesn't mean there was a fraud. Defendants may have underestimated the challenges they were going to face and they may have overestimated their ability to fix the problems, but misplaced optimism isn't fraud either. And Target Canada's failure wasn't inevitable. It wasn't until the last half of 2014 after the end of the class period when the Board of Directors of Target got a new analysis that said Target Canada isn't going to break even for at least five more years that the board decided to exit Canada and use the resources somewhere else. Postmortems were written. Those postmortems include the supply chain as part of the reasons why Target Canada failed, but this is not a case where the defendants denied the existence of supply chain problems or where investors were unaware of supply chain problems and their impact on Target Canada. They knew that from very early in the class period. So let me talk you through the complaint. March 4, 2013, about two weeks before the start of the class period. This is in paragraph 168. Investors are told that Target Canada built its technology infrastructure from the ground up and was continuing to test and refine processes and systems. March 20, 2013, the first day of the class period. Paragraph 174. Investors are warned that Target's ability to successfully open and operate stores in Target Canada would depend in large measure on its ability to, among other things, build its supply chain capabilities from the ground up. March 28, 2013. This is an investor conference that Your Honor asked me about. It was eight days after the start of the class period. The first stores had been opened. Analysts pointed out to Mr. Mulligan that Target Canada had taken it on the chin. That was the question on the transcript. Taken it on the chin because of out-of-stocks. And Mr. Mulligan acknowledged that the supply chain wasn't working as well as it had tested. May 22, 2013. Complaint paragraph 183. First quarter, Target Canada. Target reports sales below expectations and an operating loss attributable to Target Canada. May 30, 2013. Complaint paragraph 196. This is an investor conference where Mr. Mulligan attended. You look at the transcript of the conference. There's acknowledgement by the analysts that the replenishment system wasn't working. Mr. Mulligan says, well, the replenishment system's going to take a while to tune. Target Canada is still tuning it. A wave of enhancements need to be made, and we need to make operational improvements. August 21, 2013. Complaint paragraphs 212 to 213. Now, this is five months from the start of the class period. Almost a year before the end of this class period with the alleged fraud. August 21, 2013. Target reports disappointing sales, gross margin, and losses from Target Canada. It updates its guidance and it says, contrary to what we were telling you previously, investors, Target Canada isn't going to be profitable until 2015 at the earliest. And stating that launching Target Canada had required us to build a brand new supply chain infrastructure. October 30, 2013. Complaint paragraph 222. Mr. Fisher speaks at an investor conference. And this is an important date because it's more than 10 months before the end of the class period. Keep in mind the class period doesn't end until August 2014. We're now October 30, 2013. Mr. Fisher says, since opening in stocks have been our number one problem at Target Canada, we have faced a significant learning curve with new-to-target systems and processes. We're not where we want to be. We need to improve in-stock supply chain technology and tools, and we're working on literally hundreds of fixes to get better. November 21, 2013. Nine months from the end of the class period. Third quarter results. Again, Target Canada is disappointing sales, gross margins, and losses. According to the plaintiff itself, this reveals that Target was struggling mightily in Canada. November 2013. Target says our poor performance in Canada is attributable to, among other things, supply chain startup challenges. So by November 2013, investors knew there were problems with supply chain, that Target was struggling in Canada, and that Target was struggling financially. Plaintiff admits that defendants told investors about the problems. I'd ask your honors to look at complaint paragraph 119, proposed second amended complaint 139. Now, they try to phrase it as sort of a glass half full admission, but it is an admission, and it's an admission of a fraud by hindsight case. This is what they say. Even though defendants may have generally informed investors during the class period that the Canadian segment supply chain was experiencing problems, that's the admission, they never notified investors about the root causes of the issues or that they were so fundamental or systemic that the entire supply chain needed to be reset. So let's talk about the even though part. When you're talking about root causes, you're talking about something that you identify in hindsight. What's the root cause? Counsel, do we know from the record whether Target initiated any litigation against SAP or Retalix? To my knowledge, they did not. The company went into the Canadian equivalent bankruptcy of 2015, and any claims that might have existed would have belonged to the company in bankruptcy. So like I said, the root cause is a hindsight issue. And in any event, failure to disclose all the details, if you disclose a problem, it's not misleading to fail to disclose all the details. And I would point your honors to this court's decision in the Detroit retirement system versus Medtronic case from 2010. And that was a case where Medtronic had some leads that were fracturing. Medtronic sent out a dear doctor letter disclosing the problem, and the plaintiffs alleged that there was fraud because there was more details about reports and testing than the letter contained. And this court said it's hard to argue that a company that discloses its problems is misleading investors. And there's no duty to disclose details that are not inconsistent with what you've already said. The reset question, they say, you didn't tell us that the problems were so fundamental or systemic that the entire supply chain needed to be reset. That word only comes up in a press release issued one week after the end of the class period on August 12, 2014. This is new management at the time. They issue a press release, and I invite your honors to look at it. It's at the appendix T-946. They've issued this press release, and it announced a number of different initiatives. One of which is some additional initiatives with respect to supply chain. One of the things they say is we're going to count all our inventory in our stores and use that to reset our supply chain. Understand what plaintiffs are saying. They're saying you committed securities fraud, defendants, because you didn't tell us on March 20, 2013, when the class period started, what new management was going to do on August 12, 2014, 16 months later and after the end of the class period. That's a fraud by hindsight. Counsel, I'm sorry to let you finish your thought, but I'd like you to address the argument that Mr. Love opened with, and that is denial of the motion to amend the complaint and whether or not the district court failed to address some of the issues that were raised in that proposed second amended complaint and whether or not that's an abuse of discretion. Well, number one, your honor, it's not an abuse of discretion, and I would suggest to you that she didn't fail to address them. The proposed second amended complaint really didn't add anything new. It added four confidential witnesses who said the same thing as the ones that said before. What they didn't do is what the judge told them they needed to do, which was to plead sufficient specific facts that existed as of the dates of the statements that would show those statements were false or misleading. But certainly the tone of that order is different. It gets into materiality in a way, I think, that the previous orders from the district court didn't, and the argument is, I think, that the district court was taking into account things it should not have and based its order on the wrong grounds, perhaps. Well, maybe the plaintiffs are trying to suggest that, but I would suggest that when you're talking about omissions, which is what this is talking about, because they're not saying we didn't tell you about problems. They're saying you didn't give us enough details, right? And it's kind of unclear what those details were supposed to be because you'd have to know the exact specifics as of the dates of the statements to know what details should have been disclosed. But what they're saying is you didn't tell us. Yeah, you told us there were supply chain problems and that Target Canada was losing money and you had in-stock. We told us all that stuff. But you didn't tell us that you had inventory and warehouses piling up, to take that as an example. Well, for them to make that argument, they need to plead facts showing what date are they talking about when there was inventory at warehouses piling up. How much inventory are we talking about? Was it of a timing and of a magnitude that would have rendered any of the statements false or misleading with made? And that's what's missing here. They have sort of general allegations that are vague as to time. They are vague as to details. They are vague as to magnitude. And you can't use those to make a securities fraud claim. With regard to what the judge did, she does talk about it in terms of materiality, but I think it's ultimately a falsity inquiry. Because, again, when you're talking about whether a statement is misleading as opposed to whether it's literally false, whether it's misleading, you've got to look at the omitted information in light of the context of what's already out there. And this course has said that in the Amdocs case. It's one of this court's decisions from, I think, 2008. And there the court talked about, said, yes, materiality is usually an issue for the trier of fact, but there are some situations where information, where a statement is immaterial as a matter of law. And among those that they mentioned are statements where the data that allegedly was concealed is so insignificant in the context of the total mix of information that it wouldn't have had an impact to a reasonable investor. Another situation that they point out where an alleged omission is immaterial as a matter of law is where there were cautionary warnings. Well, this record is a complaint is replete with cautionary warnings. Now, with regard to the 13 statements, there are some characteristics they share that I think Your Honor should consider. The 13 statements are the ones that we addressed in our brief and that the plaintiffs argued on appeal. First, as I mentioned, none of them are alleged to have been literally false. It's all misleading. So look at the context. Secondly, most of them didn't involve hard facts at all.  They're what the district court correctly said in her second opinion were soft information. And this court and many other circuits have said that soft information, statements of general optimism, statements of general descriptions of a business are only rarely actionable because they're not the kind of information that a reasonable investor would rely upon. Another thing the 13 statements have in common is all but two of them. That is 11 out of the 13. All allegedly were made before November 2013. So in the first very early period of time. And that, I would suggest to you, indicates that what you have is a situation where this time is going on, defendants are learning more, providing more information. It's not a situation as plaintiff's closet where there was this unknown fraud that lasted from March 2013 to August 5, 2014. Finally, Your Honor, and as Judge Shepard mentioned, many of the 13 statements don't involve supply chain IT systems at all. They involve other topics. Your Honor asked a question about inventory. So excessive inventory, what they're talking about is inventory in the stores that they had to mark down in order to move it out of the store. Now, what the defendants are saying in a number of those statements is essentially we don't have the right merchandise in our stores at the right prices that people wanted to buy. And so we need to mark it down. It's affected our gross margins. We have an inventory overhang and the like. There are no facts indicating that any of those statements are false, and they're certainly not misleading for failing to talk about the situation at the warehouses because they don't deal with supply chain IT. They deal with inventory. Some of the statements, and they're talking about inventory, they say our inventory situation is improved. There's no facts indicating that it wasn't an improvement. The fact that there might still be problems isn't inconsistent with the statement that the defendants made. So, Your Honor, in conclusion, we think the district court considered the right things, that is the specific statements in the context. The court applied the correct law, the PSLRA and this circuit's guidance, and the district court correctly concluded that defendants' public statements were not alleged to have been false or misleading when made. They were just not actionable. Target Canada had supply chain problems. It was struggling financially. Those bottom line assessments were out there, and that's all the law requires. If the court has further questions, I thank you for your time. We ask you to affirm the district court's judgment. All right, thank you, counsel. Thank you. How much time does Mr. Love have remaining? Just over three minutes, Your Honor. First, counsel says that the statements are alleged only to be misleading and not false. Clearly throughout the complaint, these are false statements. They're also omitting material facts which make them misleading. Defendants want to turn this case into a case about summary judgment and bringing in exhibits that they say can be considered in context. As the U.S. Supreme Court said in Tell-Abs, when we'll get a motion to dismiss, courts can look at documents that are incorporated into the complaint by reference, matters which the court may take judicial notice. That did not happen here. Although defendants say that Target disclosed these problems to the public, that they were forthcoming about their problems, it's important to look at what the analysts said after each of these. After each time, excuse me, Target kind of says, you know, we're having some problems, but then the analysts come back and say, and they're always surprised. So on April 13th, Morgan Stanley says, looks like inventory stock issues have been ironed out. But then after guidance was reduced in November 2013, analysts were confounded because they thought after an investor meeting that everything was fine. May 18th, 2014, an analyst says, Target's continued failure to resolve these inventory problems seemed to worsen, was the opposite of what Target represented. It was only in August 2014, the end of the class period, where analysts say Target finally started to fully acknowledge the magnitude of their problems. Counsel, isn't that hindsight, though? Isn't that what your opposing counsel is highlighting? I mean, that's simply hindsight. I mean, later on it turned out to be true, but you need to prove falsity and knowledge of falsity at the time the statements were made. Right. What I'm saying is what defendants represented in terms of problems turned out to be much worse from an analyst's point of view. But throughout, this is not a fraud by hindsight case. We have employees at the time describing how bad these problems were, that the supply chain systems were not working. And even though defendants kept saying these are growing pains, this is just like what happened in the U.S., that all we're doing is fine-tuning. And by fine-tuning, if I can point the court to paragraph 208, what Steinhoffel is saying there is that fine-tuning has to do with looking at accurate data and sort of fine-tuning between customer behavior and demand and inventory. He wasn't talking about dealing with inaccurate data and sort of these massive problems that were going on. That is not fraud by hindsight. This is what was happening at the time. They knew it was happening at the time. And it's sort of like the district court, here's this moving target where finding fraud by hindsight with the first complaint because it wasn't clear that the problems were this deep at the time. And then in the motion for reconsideration, it's like, well, everyone already knew about the problem, so it didn't matter. Counsel says that the defendant, that the court did address the new allegations in the motion for reconsideration. There's no suggestion at all in the motion, in the denial of the motion for reconsideration that the court considered. There's no mention of any of the new allegations, which are specific to specific times when defendant statements, false statements were made. The confidential witnesses who are higher up in the chain of command talking about specific times when these statements were not true. All right. Thank you very much. Thank you. All right. We'll be in recess for 10 minutes.